## IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| AL-QADEER MALIK HAMLET, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. |
| vs. | * | 2:07-cv-1011-MEF |
| | * | |
| D.T. MARSHALL, et al., | * | |
| | * | |
| Defendants. | * | |

### SPECIAL REPORT

COME NOW the Defendants (1) D. T. Marshall, Sheriff of Montgomery County, Alabama; (2) Gina Savage, Detention Director for the Montgomery County Detention Facility; and (3) Sondra Wright, Outgoing Mail Clerk at the Montgomery County Detention Facility, and submit the following Special Report to this Court.

### DOCUMENTS

Affidavit of D.T. Marshall

Affidavit of Gina M. Savage

Affidavit of Sondra Wright

### PLAINTIFF'S ALLEGATIONS

In Count I of the Complaint, Plaintiff asserts a claim for "Denial of Access to Courts/Illegal Censorship" against the Defendants. Plaintiff claims that he has filed pro se motions that "have not reached the clerk of court's office." (Complaint, Count I) Plaintiff further claims that Mail Clerk Wright notarized his complaint against his attorney but failed to mail it to the Alabama State Bar. (Id.)

1

In Count II of the Complaint, Plaintiff asserts a claim for Cruel and Unusual Punishment against the Defendants.  Plaintiff claims that on more than one occasion, he has complained about not receiving mail from his family "and the behavior by the mail clerk continued and escalated for which I seek relief for."  (Complaint, Count II)

In Count III of the Complaint, Plaintiff asserts a claim for deliberate indifference against Defendants Marshall and Savage.  Plaintiff claims that Marshall and Savage are the executives of the facility and have failed to correct the continued violation of his civil rights by the mail clerk.  Plaintiff seeks compensatory and punitive damages, and "the ability to have access to the courts as prescribed by law."  (Complaint, p. 4)

## FACTS

Plaintiff Al-Qadeer Malik Hamlet, a pre trial detainee, was booked into the Montgomery County Detention Facility on July 13, 2007, charged with 11 counts of third degree burglary, 4 counts of second degree burglary, and 1 count of first degree burglary and possession of burglary tools; a total of 17 charges, with bond set at $180,000. (Gina M. Savage Affidavit, no. 3)

Prior to November 7, 2007, Defendant Wright, the outgoing mail clerk at the Montgomery County Detention Facility, spoke with inmate Hamlet's mother, Ms. Bowers, concerning inmate Hamlet's mail not being mailed from the detention facility. (Sondra Wright Affidavit, no. 3, ¶ 1) Wright investigated the matter and determined that inmate Hamlet was not addressing his letters in accordance with the policy outlined in the *Inmate Handbook on Rules and Regulations,* pp. 10-11.  (Id.)  Wright spoke to inmate Hamlet and explained the proper way for him to address his letters.  (Id.)

On November 3, 2007, Outgoing Mail Clerk Wright received a request from inmate Hamlet stating that he needed a document notarized. (Sondra Wright Affidavit, no. 3, ¶ 2) Wright notarized this document which was a letter to the Alabama State Bar from inmate Hamlet. (Sondra Wright Affidavit, no. 3, ¶¶ 2-3)

Wright subsequently determined that this letter had become mixed up with other paperwork on her desk and was sent to the Montgomery County Circuit Court by mistake. (Sondra Wright Affidavit, no. 3, ¶ 3) Wright contacted the Circuit Court and was advised that the court had received the letter and had mailed it to the intended recipient, the Alabama State Bar. (Id.; November 27, 2007 Memorandum from Tomeca Rogers, Montgomery County Circuit Clerk's Office, p. 7 attached thereto)   Wright also explained the error to inmate Hamlet who told her that "it was okay" and that he would write to the Alabama State Bar and obtain a new packet." (Sondra Wright Affidavit, no. 3, ¶ 3; Inmate Request Form with notation dated November 6, 2007, p. 1 thereto) The records of the Montgomery County Detention Facility show that inmate Hamlet did indeed write another letter to the Alabama State Bar on November 8, 2007. (Sondra Wright Affidavit, no. 3, ¶ 3)

On November 9, 2007, Inmate Hamlet submitted a grievance regarding his mail that was mailed on November 6 and 7, 2007. (Gina M. Savage Affidavit, no. 4, ¶ 1; Sondra Wright Affidavit, no. 3, ¶ 4) This grievance stated that Wright had lost/misplaced inmate Hamlet's letter to the Alabama State Bar and that this deprived him of access to the courts. (Sondra Wright Affidavit, no. 3, ¶ 4; grievance pp. 2-3 attached thereto) Inmate Hamlet also stated that his mother and his sister in New Jersey had not received his letters, and that he had filed pro-se motions with the courts and had not received any

indication that these motions had been received by the courts.  (Id.)  Inmate Hamlet also asked that he be provided with a list of all of his outgoing mail.  (Id.)

The grievance filed by inmate Hamlet was investigated by the grievance clerk, Patricia Harris, in accordance with detention facility policy, and a response was forwarded to inmate Hamlet on November 15, 2007.  (Gina M. Savage Affidavit, no. 4, ¶ 1; Sondra Wright Affidavit, p. 5 attached thereto)   The grievance clerk determined that inmate Hamlet's mail was not being held and that he was not being denied access to the courts.  (Sondra Wright Affidavit, p. 5 attached thereto)  It is not the policy of the Montgomery County Detention Facility to provide inmates with a list of all mail they have sent out.  Therefore, inmate Hamlet's request for a list of all mail he had sent was denied. (Gina M. Savage Affidavit, no. 4, ¶ 2; Sondra Wright Affidavit, no. 3, ¶ 5)

On November 14, 2007, Wright also received a telephone call from Ms. Bowers regarding mail from her son that she had not received. (Sondra Wright Affidavit, no. 3, ¶ 3; Answer to Grievance, p. 5 attached thereto) Wright explained to Ms. Bowers that according to her records, letters were mailed from the facility to Ms. Bowers on September 4, 2007, September 20, 2007 (2 letters), October 1, 2007 and November 8, 2007.  (Id.)  Also, on November 8, 2007 a letter was mailed from the facility for inmate Hamlet to New Jersey.  (Id.)  During the week of November 9-12, 2007, facility records also show that Hamlet wrote several letters to the clerk of the Montgomery County Circuit Court, Melissa Rittenour.  (Id.; Answer to Grievance p. 5 thereto)

On November 21, 2007, while preparing mail to be shredded, Wright identified a letter that Hamlet had requested to be mailed to New Jersey.  The letter was not addressed in accordance with the policy regarding outgoing mail.  (Sondra Wright

Affidavit, no. 3, ¶ 6) Wright explained to inmate Hamlet the proper procedure for mailing letters but he refused to put his last name on the envelope and insisted that he only had to put the letter "K" for the name on the return address. (Id.; inmate request form, notation dated November 21, 2007, attached as p. 6 thereto; Affidavit of Gina M. Savage, *Handbook on Inmate Rules and Regulations* attached thereto, p. 11, no. 5)

It is the policy of the Montgomery County Detention Facility that every effort will be made on the part of facility personnel to ensure safe custody, decent living conditions, and fair treatment for all inmates. (D. T. Marshall Affidavit, ¶ 3) The total daily operations of the Montgomery County Detention Facility are the responsibility of the Director of the Montgomery County Detention Facility. (Id. at ¶ 2)

Sheriff Marshall and Director Savage have never had any contact with inmate Hamlet. (Gina M. Savage, no. 4, ¶ 3; Affidavit of D.T. Marshall, ¶ 2) Proper inmate procedures were followed in processing mail for Inmate Hamlet. (Gina M. Savage, no. 4, ¶ 4) When inmate Hamlet's mail was properly addressed as stated in the *Handbook on Inmate Rules and Regulations,* it was properly mailed from the facility, with the exception of the Alabama State Bar form that was inadvertently delivered to the Montgomery County Circuit Court in error. (Gina M. Savage Affidavit, no. 4, ¶ 4) This error was corrected because the Circuit Court mailed the form to the Alabama State Bar, the intended recipient. (Gina M. Savage, no. 4, ¶ 4; Sondra Wright Affidavit, no. 3, ¶ 3; memorandum dated November 27, 2007, p. 7 attached thereto)

### DEFENSES

1.    The Complaint fails to state a claim against Defendants upon which relief can be granted.

2.      Defendants did not violate any of the Plaintiff's constitutional rights afforded him under law.

3.      Defendants are entitled to immunity under the Eleventh Amendment to the United States Constitution with respect to Plaintiff's claims against them in their official capacities.

4.      All official capacity claims against Defendants must be dismissed because in their official capacities, Defendants are not considered "persons" subject to liability under 42 U.S.C. § 1983.

5.      Defendants are entitled to qualified immunity with respect to Plaintiff's claims against them in their individual capacities.

6.      Defendant aver that they acted in a manner that was in accordance with previous court rulings regarding the operation of the Montgomery County Detention Facility.

7.      Defendant avers that the prison regulations in question were reasonably related to legitimate penological interests.

8.      Plaintiff's claim for emotional distress is due to be dismissed because Plaintiff has not suffered any physical injury as a result of living conditions at the Montgomery County Detention Facility.

9.      Plaintiff has failed to satisfy the requirements for injunctive relief therefore all claims for injunctive relief are due to be dismissed.

**MEMORANDUM OF LAW**

**A.      <u>Official Capacity Claims.</u>**

Plaintiff's claims against Defendants in their official capacities must be dismissed because they are entitled to immunity pursuant to the Eleventh Amendment to the United States Constitution. The Eleventh Amendment prohibits suits in federal court against States and state officials in their official capacities. *Kimel v. State of Florida Bd. of Regents,* 139 F.3d 1426, 1429 (11th Cir. 1998); *Parker v. Williams,* 862 F.2d 1471 (11th Cir. 1989). Under Alabama law, sheriffs are state officers, and tort claims brought against sheriffs and their employees based on their official acts constitute suits against the State of Alabama. *Lancaster v. Monroe County,* 116 F.3d 1419, 1429 (11th Cir. 1997); *Parker v. Williams,* 862 F.2d 1471 (11th Cir. 1989), *rev'd on other grounds, Turquitt v. Jefferson County,* 137 F.3d 1285 (11th Cir. 1998).

Plaintiff's claims against Defendants in their official capacities under 42 U.S.C. §1983 should also be dismissed because in their official capacities, Defendants are not considered "persons" subject to liability under 42 U.S.C § 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed. 2d 45 (1989); *Adams v. Franklin,* 111 F.Supp.2d 1255 (M.D.Ala. 2000).

**B.    Qualified Immunity.**

**1.    No personal Involvement by Marshall and Savage.**

For liability under § 1983, specific acts of personal involvement in the deprivation must be shown. *Respondeat superior* liability is not cognizable under § 1983. *Braddy v. Florida Dep't. of Labor & Employment Sec.,* 133 F.3d 797, 801 (11th Cir. 1998); *Smith v. State of Alabama,* 996 F.Supp. 1203, 1212 (M.D.Ala. 1998). If the complaint does not allege that a defendant personally participated in the alleged constitutional deprivation, it should demonstrate an affirmative causal connection

between the defendant's acts and the alleged constitutional deprivation in order to state a cause of action under § 1983. *Braddy,* 133 F.3d at 801-802; *Smith,* 996 F.Supp. at 1212.

The Eleventh Circuit has also imposed a "heightened pleading requirement" on plaintiffs when evaluating claims of qualified immunity. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1367 (11th Cir. 1998). This requires that the plaintiff's complaint contain detailed allegations and specific facts concerning each defendant, which indicates what each defendant did to violate the plaintiff's rights. "Otherwise, the court must conclude that the named defendants, sued in their individual capacities, are entitled to qualified immunity from claims under both §§ 1981 and 1983." *Smith v. State of Alabama,* 996 F.Supp. 1203, 1212 (M.D.Ala. 1998).

Plaintiff's Complaint fails to set forth any facts of any personal involvement of Defendants Marshall and Savage in the alleged constitutional deprivations complained of by Plaintiff. There is also no allegation demonstrating a causal connection between the alleged acts or omissions of Defendants Marshall and Savage and the Plaintiff's alleged injuries. It further appears that Sheriff Marshall and Director Savage are sued solely because they had supervisory authority over the personnel at the detention facility. Because there are no facts demonstrating any personal involvement by these Defendants, they are entitled to qualified immunity.

### 2.     Lack of Clearly Established Law

"Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzales v. Lee County*

*Housing Authority,* 161 F.3rd 1290, 1295 (11th Cir. 1998). Defendants were acting within the scope of their discretionary authority, and the burden is therefore on the Plaintiff to demonstrate that the actions of Defendants Marshall, Savage and Wright amount to a constitutional violation, and that Defendant violated clearly established law. *Hope v. Pelzer,* 536 U.S. 730 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). The applicable law "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v.Creighton,* 483 U.S. 635, 640 (1987). In determining whether the unlawfulness of an official's actions was clearly established, "the salient question . . . is whether the state of the law [at the time of the unconstitutional act] gave [the official] fair warning that [his] alleged treatment of [the plaintiff] was unconstitutional." *Williams v. Consol. City of Jacksonville,* 341 F.3d 1261, 1270 (11th Cir. 2003) *quoting Hope,* 536 U.S. at 741. Plaintiff cannot meet this burden. There is no law that gave "fair warning" to the Defendants that their actions violated clearly established law. *Hope v. Pelzer*, 536 U.S. at 741.

**3.      No Constitutional Violation**

Defendants are also entitled to qualified immunity because Plaintiff has failed to allege or demonstrate a constitutional violation. In evaluating the defense of qualified immunity, the court must first determine whether the complaint states a claim for a constitutional violation. *Siegert v. Gilley*, 500 U.S. 226 (1991).

### A. Denial of Access to the Courts

Inmate Hamlett has failed to demonstrate that he suffered an "actual injury" as a result of any actions of the Defendants. Without proof of an "actual injury," Plaintiff lacks standing to allege a violation of the right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996).

> "The doctrine of standing requires that an inmate alleging a violation of the right of access to the courts must show an actual injury. *See Lewis*, 518 U.S. at 349-50, 116 S.Ct. at 2179. The injury which the inmate must demonstrate is an injury to the right asserted, i.e. the right of access. Thus, the prison officials' actions which allegedly infringed an inmate's right of access to the courts must have frustrated or impeded the inmate's efforts **to pursue a nonfrivolous legal claim**. *See Lewis*, 518 U.S. at 352-54, 116 S.Ct. at 2181. **Further, the legal claim must be an appeal from a conviction for which the inmate was incarcerated, a habeas petition, or a civil rights action.**" *See Lewis*, 518 U.S. at 352-57, 116 S.Ct. at 2181-82.

*Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998) (emphasis added). In *Wilson v. Blakenship*, 163 F.3d 1284 (11th Cir. 1998), the court also noted that an inmate has no standing to allege a violation of access to the courts **unless he first shows actual injury in the pursuit of certain types of nonfrivolous cases**.

> [P]risoners have no inherit or independent right of access to a law library or to legal assistance. *See Lewis*, 518 U.S. at 349-51, 116 S.Ct. at 2179-80. Instead, they must show actual injury in a pursuit of specific types of nonfrivolous cases: direct or collateral attack on sentences and challenges to conditions of confinement." *Id* at 355-57, 116 S.Ct. at 2182. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id* at 355, 116 S.Ct. at 2182. With respect to access-to-court claims, *Lewis* clarifies that a Plaintiff must first show actual injury before seeking relief under *Bounds*. *See Bass v. Singletary*, 143 F.3d 1442, 1444 (11th Cir 1998). **This essential standing requirement means that prison officials' actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a <u>nonfrivolous,</u> post-conviction claim or civil rights action.**

*Wilson v. Blakenship*, 163 F.3d 1284, 1290 (11th Cir. 1998)(emphasis added).

Plaintiff's Complaint merely states that his letter to the Alabama State Bar, letters to his family, and pro-se motions were not mailed. The Complaint fails to state that inmate Hamlet suffered "actual injury" as discussed above. Plaintiff has therefore failed to allege or demonstrate an actual injury as a result of any acts of the Defendants. *See Bass v. Singletary*, 143 F.3d 1442, 1445-46 (11th Cir. 1998).

### B.    Deliberate Indifference and Cruel and Unusual Punishment

The Eighth Amendment of the United States Constitution proscribes cruel and unusual punishment of prisoners. The Eighth Amendment imposes duties on prison officials "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v Brennan*, 511 U.S. 825, 832 (1994). To state a violation of the Eighth Amendment, the plaintiff must state a deprivation that must be objectively, sufficiently serious. *Id.* at 835. The plaintiff must also demonstrate that the prison official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities." *Id.* For claims based on failure to alleviate risks or provide medical care, the plaintiff must show that he is incarcerated under conditions imposing a substantial risk of serious harm. *Id.* In prison-conditions cases, the plaintiff must demonstrate that the official acted with "deliberate indifference" to inmate health or safety. *Id.*[1]

The standard of deliberate indifference equates to that of "subjective recklessness" as that term is defined in criminal law. The official must know of an

---

[1] Plaintiff was a pretrial detainee at the time of the incidents alleged in his Complaint and therefore his rights are derived from the Fourteenth Amendment. The guarantees of due process under the Fourteenth Amendment to pretrial detainees is the same as that afforded by the Eighth Amendment for convicted prisoners. *Hamm v. DeKalb County,* 774 F.2d 1567, 1574 (11th Cir. 1985).

11

excessive risk to inmate health or safety and disregard that risk.  *Id*. at 837-383. In other words, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. An official's failure to respond to a significant risk that he should have perceived but did not is not deliberate indifference.  *Id.*  Summary judgment must be granted for the official unless the plaintiff presents evidence of the official's "subjective knowledge" of a substantial risk of serious harm.  *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999). Mere incidents of negligence do not rise to the level of constitutional violations."  *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991).

In the present case, inmate Hamlet has failed to set forth any facts demonstrating deliberate indifference or cruel and unusual punishment by the Defendants.  Plaintiff's claims are based solely on the alleged fact that his mail has been held by the facility, or erroneously sent to the wrong recipient.  These acts are not cognizable violations of the Eighth Amendment or Fourteenth Amendment.  Plaintiff's deliberate indifference and cruel and unusual punishment claims against the Defendants should therefore be dismissed.

### C.     Failure to allege physical injury.

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. §1997e(c)(1), the court, on its own motion, shall dismiss a case challenging prison conditions if the court determines that an action is frivolous or fails to state a claim on which relief may be granted.  42 U.S.C. §1997 e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury."  These

provisions were enacted by Congress to control and curtail the flood of inmate suits that are filed in the courts. *See Dupree v. Palmer,* 284 F.3d 1234, 1236 (11th Cir. 2002)("The purpose of the PLRA is to curtail abusive prisoner litigation.")  In accordance with this provision, the PLRA prevents recovery "for mental or emotional injury . . . without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  *See also, Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312 (11th Cir. 2002).

Inmate Hamlet alleges no physical injury as a result of the living conditions at the Montgomery County Detention Facility.  Because Plaintiff has failed to allege a physical injury, his claims should be dismissed.

Respectfully submitted this 2nd day January, 2008.


s/Constance C. Walker
Constance C. Walker (ASB-5510-L66C)
Attorney for Defendants D. T. Marshall, Gina M. Savage and Sondra Wright


**OF COUNSEL:**

**HASKELL SLAUGHTER YOUNG & GALLION, LLC**
Post Office Box 4660
Montgomery, Alabama 36103-4660
(334)265-8573
(334) 264-7945 Fax

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have served the foregoing document upon the following by

causing a true and complete copy of same to be deposited in **the United States Mail,**

sufficient first class postage prepaid, on this the 2nd day of January, 2008, addressed as

follows:

Al-Qadeer Malik Hamlet

Montgomery County Detention Facility

Post Office Box 4599

Montgomery, Alabama 36102-4599

*s/ Constance C. Walker*

Of Counsel

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **AL-QADEER MALIK HAMLET** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 2:07-CV-1011-MEF** |
| ) | |
| **D. T. MARSHALL, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>AFFIDAVIT OF D. T. MARSHALL</u>

Before me, a Notary Public, personally appeared D. T. Marshall and after being duly sworn, did say as follows

1.    My name is D. T. Marshall and I am Sheriff of Montgomery County, Alabama.

2.    I have not violated the constitutional rights of Inmate Al-Qadeer Malik Hamlet.

3.    It is the policy of the Montgomery County Detention Facility that every effort will be made on the part of facility personnel to ensure safe custody, decent living conditions, and fair treatment for all inmates.

4.    The total, daily operations of the jail are managed by the Director of the Detention Facility, employed by the Montgomery County Sheriff's Office.

_____
D. T. Marshall

Sworn to and subscribed before me this _12_ day of _December_, 2007.


_____ Lenn (Hines) Cates _____
Notary Public
My Commission Expires September 13, 2010

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| AL-QADEER MALIK HAMLET | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-CV-1011-MEF |
| | ) | |
| D. T. MARSHALL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF  GINA M. SAVAGE

Before me, a Notary Public, personally appeared Gina M. Savage and after being duly sworn, did say as follows

1.    My name is Gina Savage.  I am Director of the Montgomery County Detention Facility.

2.    I have not violated the constitutional rights of Inmate Al-Qadeer Malik Hamlet.

3.    Al-Qadeer Malik Hamlet, a pre-trial detainee,  was booked into the Montgomery County Detention Facility July 13, 2007, charged with 11 of counts third degree burglary, 4 counts of second degree burglary, 1 count of first degree burglary and possession of burglary tools; a total of 17 charges, with bond set at $180,000.00.

4.    Our records show that Inmate Hamlet submitted a number of Inmate Request Forms regarding bond information, request for an attorney, request to have papers notarized, etc.  The first grievance received regarding his mail was dated November 9, 2007, where he inquired about mail he sent out November 6 and 7, 2007.  The outgoing mail clerk and grievance clerk, in

accordance with Detention Facility policy, investigated his complaint and a response was forwarded to him November 15, 2007. (See attached)

On November 19, 2007, Inmate Hamlet sent an Inmate Request Form to the outgoing mail clerk asking for a list of all his outgoing mail. It is not the policy of the Detention Facility to provide inmates with a list of incoming or outgoing mail.

I have not received a complaint, a grievance or any correspondence from Inmate Hamlet. I have had no contact with him.

After reviewing our file, I find that proper procedures have been followed in processing mail for Inmate Hamlet. There is no indication that his mail, when properly addressed as stated in the Inmate Handbook, has not been delivered as intended with the exception of the form that was delivered to the Circuit Court in error. According to records, this error was corrected and the form was forwarded, as addressed, to the Alabama Bar Association.

_____
Gina M. Savage

Sworn to and subscribed before me this _12_ day of _December_, 2007.

_____
Notary Public
My Commission Expires September 13, 2010

# HANDBOOK
## on
# INMATE RULES AND
# REGULATIONS

**MONTGOMERY COUNTY DETENTION FACILITY
MONTGOMERY, ALABAMA**

A Division Of
The Montgomery County Sheriff's Office

## D.T. MARSHALL, SHERIFF



## GINA M. SAVAGE
### DIRECTOR OF DETENTION

**REVISED EDITION MARCH 2005**

# Inmate Handbook
## Montgomery County Sheriff's Office

### D. T. Marshall
### Sheriff

### Gina M. Savage
### Director of Detention

The Montgomery County Detention Facility houses inmates awaiting trial and convicted inmates either serving county sentences or serving state sentences and awaiting transfer to a state penitentiary.

This handbook is intended to inform you of the rules and regulations of the Montgomery County Detention Facility and to clearly define restrictions, privileges, programs and services which will affect your stay here. It is your responsibility to read this handbook so that you may better understand how to conduct yourself.

It is necessary that you understand the basic principles which govern the management of this facility:

1.   **Security is of the highest priority** - any action on the part of one or more inmates that jeopardizes or appears to jeopardize security will not be tolerated and will be dealt with quickly and firmly.

2.   The safety of all persons in the Montgomery County Detention Facility, both inmates and staff, is equally important to security. All regulations of this facility are designed to promote efficiency and cooperation. Your attitude and conduct will play a major role in determining the quality and/or length of your stay, as well as the programs and services available to you. Additionally, if you are transferred to the State System, comments and recommendations by the Montgomery County Detention Facility Staff, based on your attitude, behavior, and institutional violations, will be forwarded with you. These comments and recommendations may influence your classification and affect the quality of your stay while in the penitentiary.

# 1. Inmate Responsibilities

## A. Identification Bracelet

1. You will be issued an identification bracelet when you enter the Montgomery County Detention Facility. Your identification bracelet must be worn at all times during your stay and must be turned in when you are released from the facility. If you lose or misplace your ID bracelet, you will be charged $10.00 for a replacement.

2. You must present your ID bracelet in order to receive canteen items, razors, mail or medications and to be given access to the library, recreation, visitation, phone calls, and haircuts. Showing your ID is inclusive of, but not limited to, these items listed.

## B. Personal Cleanliness (Showing YOUR ID REQUIRED)

1. Hygienic supplies for maintaining proper personal hygiene are available for purchase through the canteen or will be given bi-weekly if indigent.

2. You should shower as often as necessary to keep your person clean and free from odors. The Facility will provide you with soap and towels for this purpose. If a fellow inmate complains about your body odor, or if a Facility officer detects such odors, you will be required to shower. If you refuse, you will be forcibly showered by an officer of the same gender. In addition, you will be subject to certain restrictions.

3. Disposable razors, toenail clippers, and fingernail clippers are provided by the Facility for your use.

4. You will be dressed in your full uniform, i.e. jumpsuit, shirt, pants, slides/shoes, when you **exit** the dayroom area. While you are in the dayroom, you may wear a T-shirt and pants or a T-shirt with your jumpsuit top folded down and tied around your waist.

5. You will not wear tennis shoes inside the cellblock. Tennis shoes will be worn only when you are enroute to and from, or actively participating in, outdoor recreation.

6. You should be especially watchful for crab lice. The prevalence of vermin is much greater where groups of people live together, particularly when they come from all walks of life. You should examine yourself daily or each time you shower. Should you become infected, you should immediately notify an officer.

## C. Detention Facility Property

1. Bedding, towels, jump suits, and other articles assigned to you belong to the Detention Facility. You must return them in good condition when you leave, if not, then you may be required to pay for the damage or loss you have caused. Property assigned to you cannot be transferred to another inmate.

2. Be careful not to damage plumbing or other equipment. REMEMBER, if you are found guilty of any destruction or loss of county property, after a hearing you may be prosecuted and may be required to pay for the damage or loss you have caused. Any debt incurred will remain on your account indefinitely or until paid in full.

## D. Housekeeping Activities

1. You are required to clean your living quarters and share in maintaining cleanliness throughout the Facility. Your quarters will be thoroughly cleaned each morning, or more frequently if necessary. All inmates should share equally in performing these tasks. Hiring or transferring responsibilities to other inmates through devious means is prohibited. If you rebel or refuse to clean your quarters, or refuse to participate in required housekeeping activities, you will be subject to immediate disciplinary action.

2. All floors will be swept and mopped each morning, and more frequently if required.

3. All trash containers will be emptied and cleaned each morning, and more frequently if required.

4. Commodes and lavatories will be cleaned each morning,

and more frequently if required.

5. Walls will be washed as needed. No writing or drawings will be allowed on the walls, doors, floors, etc. Covering of windows, air vents or cell doors will not be allowed.

6. No trash or debris will be thrown or swept behind or under the wire doors or interconnect doors.

E. Conduct

1. Gambling and fighting are prohibited. You must obey all Detention Facility rules and follow the detention officer's instructions. You must conduct yourself in an orderly manner with respect for the rights of staff and other inmates. If you fail to do so, you may lose the privileges which are permitted to inmates in good standing, even to the point of disciplinary segregation. You are prohibited from controlling or attempting to control the actions or behavior of staff or other inmates by threat, promise, fear, force, or any other means. You cannot ridicule, tease, harass, or molest staff or another inmate.

2. You will shower daily and wear clean clothes.

3. You will be clean-shaven and hair will be neatly trimmed.

4. You will be allowed to keep one (1) pair of tennis shoes in your possession. You may wear tennis shoes in your cellblock or when performing your assigned duties.

5. You will not use obscene language, talk loudly, or conduct yourself in any way which will reflect discredit on the Facility or the Sheriff's Office.

6. You will not visit or enter a lock-up cellblock unless you are on a work detail. You will not do anything for lock-up inmates except what is required in your normal duties. If you are found in a lock-up cellblock and are not on your assigned work detail, you will be subject to disciplinary action.

7. You may not be taken from the Facility on a detail except with an authorized person unless you are assigned to a work release program. You will not leave the Facility except to perform assigned duties or to accompany and assist officers in functions approved by the Sheriff, Chief Deputy, Facility Director or OIC. You will remain within sight of the authorized person at all times.

8. When you have completed your assigned duties, you will return to your quarters or to an area as directed by your supervising officer.

9. Violation of any of the above rules may subject you to disciplinary action or the loss of trusty or volunteer worker status.

F. Conduct and Work of Trusties, Work Release, and Volunteer Workers

1. You will make your bed daily, and your quarters will be cleaned daily, and you will be responsible for your own personal area.

Volunteer Worker

To be considered as a volunteer worker, you must be a pretrial inmate incarcerated with non-violent charges and a low bond amount. Volunteer workers receive the same privileges as trusties. If you are interested in becoming a volunteer worker you should submit an *Inmate Request Form* to the Captain of Program Services by placing it in the mailbox located in the dayroom of your cellblock.

2. Inmate Privileges

A. Programs/Services (Showing INMATE ID REQUIRED)

• Educational class attendance is required for those inmates who have not graduated high school and are under the age of 18; 21 special education.

• GED and tutoring classes, when available, are offered on a voluntary basis.

• Library use is a privilege available by submitting an *Inmate Request Form* by placing it in the mailbox located in the dayroom of your cellblock. You may check

out 2 books at a time.

- **NA and AA** meetings, when available, are offered weekly to volunteers and court referrals.

- **Substance abuse treatment** programming, when available, is open to volunteers and court referrals.

## B. Religious and other Services (Showing INMATE ID REQUIRED)

Religious services are offered by the Facility Chaplain Monday - Friday. Requests for additional services or programs should be addressed to the Captain of Inmate Programs/Services.

## C. Canteen (Showing INMATE ID REQUIRED)

You are allowed to purchase snacks, hygiene items, etc. *Canteen Order* sheets are collected each Sunday and Wednesday evenings and canteen is delivered Tuesday and Friday mornings (except holidays). Money must be in your account by Friday for Tuesday delivery and Wednesday for Friday delivery.

You have three (3) days to report non-delivery of store order (not shortage). If you leave this facility prior to delivery of your order, you or a person designated by you, have three (3) days to pick-up the order. After three (3) days, all unclaimed orders will be destroyed.

*MCDF DOES NOT PROVIDE FREE HYGIENE ITEMS TO ALL INMATES. INMATES WHO ARE NOT CLASSIFIED INDIGENT\* WILL BE EXPECTED TO PURCHASE HYGIENE ITEMS FROM THE CANTEEN*

*\*Indigent* - impoverished or lack of financial resources

## Indigent Hygiene Pack Qualifications:

1. You must have **$2.00 or less** in your canteen account to receive a Hygiene Pack.

2. You must be in an indigent status for 30 days prior to ordering to qualify for Hygiene Pack

6

3. If you wish to request an Indigent Hygiene Pack, you must submit an *Inmate Request Form. Inmate Request Forms* are collected bi-weekly on Sunday evening. Do not place this form in the dayroom mailbox

## Indigent Writing Materials:

1. You must have **$2.00 or less** in your canteen account and be in an indigent status for 30 days prior to ordering to receive an Indigent Writing Pack.

2. If you wish to request an Indigent Writing Pack you should submit a *Canteen Order Form*. The top portion of the *Canteen Order Form* should be completed (Location, Name, Signature, Booking Number). *Canteen Order Forms* are collected bi-weekly on Sunday and Wednesday evening. Do not place this form in the dayroom mailbox.

3. Indigent Writing Packs will be delivered when the canteen orders are delivered. You may receive only one (1) Indigent Writing Pack per week.

4. You will be charged $1.50 for each Indigent Writing Pack you receive. In the event you have no funds or only partial funds in your account, the account will be placed in a negative balance. When funds are received, the total remaining fees will be deducted from your account.

## Radios:

1. The canteen offers radios and batteries for purchase. You may have no more than 1 radio and 9 batteries at any one time.

## D. Recreation (Showing INMATE ID REQUIRED)

1. The Montgomery County Detention Facility provides a recreation program for all inmates who wish to participate.

2. This program includes facilities for both indoor and outdoor recreation and equipment for various types of individual and team activities.

7

3. You may be given the opportunity to participate in the recreation program Monday through Friday between 7:30 AM - 11:00 AM and 2:30 PM - 4:00 PM.

4. If you wish to participate in basketball or other games which may be played in the outdoor recreation area, you must wear tennis shoes. Tennis shoes will not be worn inside the cellblock. Tennis shoes will only be worn when you are en route to and from, or actively participating in, outdoor recreation.

   a. Tennis shoes are normally available for purchase from the canteen.

   b. Tennis shoes are not issued to you by the Facility nor are they authorized to be brought to you from outside sources.

   c. Tennis shoes are not issued free to indigent status inmates.

E. **Haircuts (Showing INMATE ID REQUIRED)**

1. Haircut services are provided each Tuesday by a licensed barber. You should submit a *Request for Haircut* form, obtained from the booth operator or rover, along with your *Canteen Order* form on Sunday evening.

2. You must have money in your canteen account in order to purchase a haircut. Once you submit your *Request for Haircut* form and money is deducted from your canteen account, you will not be issued a refund should you change your mind. Prices for haircuts are as follows:

   a. Fade          $8.00
   b. Regular haircut    $6.00
   c. Line          $3.00
   d. Shave/Shape   $3.00
   e. Moustache trim    $2.00

3. Indigent inmates may submit a *Request for Haircut* form one (1) week prior to jury trial.

4. Trusties will receive one (1) free, regular haircut the first Tuesday of each month when you submit a *Request for Haircut* form.

F. **Phone Calls (Showing INMATE ID REQUIRED)**

1. When you are processed into the Montgomery County Detention Facility you will be allowed to make one phone call. Care will be exercised by the OIC of the shift to ensure that you do establish telephone contact with the intended party.

2. When you enter the facility, you will be assigned a Pin Number. Memorize your Pin Number. Do not share it with anyone. The first 10 numbers you dial that are accepted calls will be the only numbers you will be allowed to call while you are incarcerated. These numbers do not include calls that are denied, calls that are blocked, etc.

3. All calls, with the exception of the initial call allowed when you enter the Facility, will be made collect to the receiving party. You must know the telephone numbers of the persons you are calling. Directory assistance is not available. Local calls will be billed to the receiving party by the telephone company at the current rate of $2.85 for a 15-minute call.* *Rates are subject to change. *Long Distance calls will be billed at a higher rate.*

4. Telephone calls, other than those permitted at the time of initial entry into the Facility, are a privilege and not a right and may be given to those who need them and have earned them through cooperation with Facility personnel in conforming to the prescribed rules and regulations of the Montgomery County Detention Facility.

5. If you are here from the Department of Corrections, you will not be allowed the initial phone call at the time of entry.

6. For security purposes, telephone calls will be recorded and may be monitored.

G. **Mail/Correspondence/Packages (Showing INMATE ID REQUIRED)**

**Legal Mail**

1. You have a legal right to communication, without censorship, with counsel of your choice, public officials or

the Courts. If applicable, you will be permitted to communicate, without censorship, within reasonable limits, with the Attorney General, the Director of the Bureau of Prisons, the Pardon and Parole Attorneys, the United States Marshals, the United States District Judges, and any District Attorney or Circuit Court Judge.

2. Incoming communications addressed to you from any of the sources named above will not be subject to censorship. However, said communications will be opened in your presence by the officer/clerk delivering your mail for the purpose of checking for contraband.

3. Incoming or outgoing communication between you and your attorney (licensed to practice in the State of Alabama) will not be opened except in your presence and then only to check for contraband.

4. Your attorney is prohibited from mailing out any letter, document, or correspondence for you or any other inmate in this Facility.

**Outgoing Mail**

1. Normally you will be permitted to correspond with your family and friends. While awaiting trial, you may correspond with any individual you need to contact in the preparation of any defense. You are encouraged to maintain written contact with your family and friends while in the Montgomery County Detention Facility.

2. Contents of your letters shall be limited to matters of personal interest to friends and relatives. Other inmates in the Facility or Facility personnel are not to be discussed in outgoing mail. The use of profanity, threats, pornography, or diagrams of any part of this Facility is strictly prohibited.

3. Normally outgoing mail will not be opened for inspection unless there is reasonable cause to suspect it contains contraband that may affect the security of the Facility, inmates and/or staff. Such suspected mail will be opened only by order of the Director or Assistant Director, and then only in the presence of the sender.

4. Envelopes, stamps, pencils and paper supplies are avail-

able for purchase from the Canteen. If you wish to purchase writing supplies, complete a *Canteen Order Form* and submit it on the appropriate day. Handmade envelopes will not be accepted.

5. All outgoing mail must have a valid stamp affixed to the envelope. The following information must be written or printed in the upper left-hand corner of the envelope:
First and Last Name *(No initials or nicknames)*
Booking # _____ MCDF
P. O. Box 4599
Montgomery, Alabama 36103

6. You should ensure that the addresses section of outgoing mail contains full information, i.e. first and last name, street address, city, state and zip code. Outgoing mail not properly addressed will be destroyed.

**Incoming Mail**

1. During in processing, you may sign the Montgomery County Detention Facility *Inmate's Personal Property Envelope* (section pertaining to opening of mail) which authorizes the Sheriff or any of his officers to open all mail (with the exception of legal mail) that you may receive while incarcerated at the Montgomery County Detention Facility. If you refuse to sign the authorization, any mail addressed to you will not be accepted and will be returned to sender. This does not apply to legal mail.

2. To afford maximum privacy, incoming communications between you and any source will not be censored. However, it will be opened and examined for contraband, cash monies, money orders, business checks, dividend checks, government checks, etc. Any monies other than money orders or cashier's checks will be returned to sender.

3. Communications you receive after you have been released from the Montgomery County Detention Facility will be returned to sender.

4. The Montgomery County Detention Facility is not required to pay cost of "Postage Due" on any incoming mail. Correspondence received in this manner will be returned to sender.

5. Incoming mail should have a return name, street address, city, state and zip code. Incoming mail not properly addressed will be destroyed.

6. Incoming mail will be delivered the day after receipt, excluding weekends and holidays.

## H. Reading Materials (Check Out From Library)

You are allowed to keep *three (3) books* in your possession at one time.

    1 Religious Book
    2 Library Books

Reading materials direct from the publisher may be allowed with administration approval.

## I. Visitation (Showing INMATE ID REQUIRED)

1. You may list two (2) names on your visitation card. You may change the names the first of each month.

2. Visitation is offered seven (7) days per week, including holidays, between 8:00 AM - 11:00 AM and 6:00 PM - 9:00 PM.

3. You have two (2), 30-minute visitation periods each week. The people you list on your visitation card should call the jail and make an appointment to visit you. Each visitor may visit you for 30 minutes. Each visitor is allowed to visit only one (1) 30-minute period each week.

## 3. Jail Operations

### A. Personal Property

You are not allowed to have valuable articles in your possession nor are you allowed to transfer clothing or other property to other inmates. Property found in violation will be confiscated and forfeited. Body jewelry and wigs are not allowed. At the time of booking, all property taken from you should be listed on the property inventory log.

Personal property may be released at any time during the

first 72-hours of admittance. After that, property may be released on your scheduled visitation day. Excess property not picked up by family or friends within 7 days of booking will be destroyed.

## B. Money

You will be requested to sign your property slip at the point of booking. At the point of release, again you should sign your property slip fully acknowledging the fact that you have received all the items listed on the log. The Montgomery County Detention Facility has a $50.00 cap on its liability for any personal items. It is your responsibility to remove any personal property assessed at over $50.00 within three (3) days of admittance. Claims for lost inmate property should be filed with Detention Facility staff upon release.

Friends and relatives may deposit money orders (no cash or checks are accepted) in your inmate account Monday through Friday between the hours 8:00 AM - 4:00 PM, excluding holidays. Money orders should be made payable to MCITF. You are not allowed to have money in your possession.

## C. Escape and Contraband

Any inmate who escapes, attempts to escape, assists another to escape, or is responsible for bringing into the Detention Facility any weapons, saws, tools, narcotic drugs, alcohol, hallucinogenic substances, or any items not approved by the Detention Facility will be prosecuted as provided by law. There will be no exceptions.

Contraband is defined as any item unauthorized by this Facility. Any authorized object that has been modified will be considered contraband. Items found to be contraband will be destroyed.

## D. Grievance

You are entitled to voice any grievance to the Jail Administration. You are encouraged to put the grievance in writing on the *Inmate Grievance Form* and place it in the mailbox located in the dayroom of your cellblock. The Administration will give prompt and fair consideration to any grievance and will take appropriate action when warranted.

### E. Food (Showing INMATE ID REQUIRED)

You will be served three meals a day. The food will be wholesome and nutritional. Since food is expensive, you must not waste it. The menus meet recommended dietary allowances, Alabama Administrative Code, American Correctional Association and Local Health Code Standards.

Uneaten food items should remain on your tray and be returned during pick-up. Hoarding of food items provided by the Detention Facility will not be allowed.

### F. Medical Services (Showing INMATE ID REQUIRED)

Reasonable and customary medical treatment is available to you. Limited dental treatment is also available. You may request, at your own expense, a private physician (such appointments will be made by this Facility and will be unknown to you and your family). Otherwise, the service will be in accordance with the Detention Facility's medical plan. You should have an opportunity to report illnesses daily through the *Inmate Request Forms*. You may refuse, in writing, health treatment and care; however, you must do so in the presence of the health care staff.

**Medical Charges to Inmates**

You will be charged a co-payment of **$10.00** for all self-initiated, non-emergency medical services. However, indigent inmates will never be denied medical services.

If you are involved in an altercation that results in injury to another inmate or officer, you will be charged a medical fee for the injured inmate's or officer's medical treatment.

In the event you have no funds or only partial funds in your account, the account will be placed into a negative balance. When funds are later received, the total or remaining fees will be deducted from your account.

Upon your release from the Facility, any unpaid medical fee balance will reflect a debit on your account from the date of release. If re-incarcerated, that debit will be deducted from any future funds then deposited to your account.

### G. Searches

Your cell, your bunk area, and your person will be subject to random searches for contraband.

You may be subject to unclothed searches under the following conditions:

1.  Contact with persons from outside the facility
2.  Re-entering secure area of facility
3.  Legitimate penological concerns

### H. Laundry

Uniforms and linens are washed weekly. Blankets are washed every three (3) months. The only items that should be placed in your laundry bag are:

1.  1 Uniform
2.  1 Towel
3.  1 Face Cloth
4.  2 Sheets

**Do not send both uniforms to laundry on change-out day. We will not be responsible for, nor will we replace, any personal items that are lost. Do Not Place Personal Items In Laundry Bag.**

**Change-Out Schedule**

1.  4-North, 4-South and 4-Isolation change out day is Monday.
2.  3-North, 3-South and 3-Isolation change out day is Tuesday.
3.  2-South and Medical change out day is Wednesday.
4.  2-North (D,E,F,G) change out day is Thursday.

### I. Television

Television is a privilege, not a right. Television privileges may be given to those cellblocks that have earned them through cooperation with facility personnel and by complying with the prescribed rules and regulations of the Montgomery County Detention Facility. The television may be turned on at 6:00 P.M. and will be turned off at 10:30 P.M. Cellblocks with good behavior may receive additional televi-

sion privileges for the weekend.

**J.**  **Marriage**

You will not be allowed to marry while incarcerated in the Montgomery County Detention Facility.

**K.**  **Voting**

Notices will be posted in cellblocks advising you of upcoming elections. If you are a registered voter, you may request an "*Application for Absentee Ballot*" from the county in which you are a legally qualified voter. You will receive a ballot thirty (30) to forty-five (45) days before the election. You will be responsible for completing the ballot and mailing it to the Absentee Election Manager by the U.S. Mail.

**L.**  **Lockdowns**

When a lockdown is ordered, you should immediately go to your assigned room or sit on your mattress if you are assigned to the floor. You should remain quiet and in place until further notice is given.

This facility maintains complete security lockdown of all inmates daily during the following hours:

12:30 PM - 2:30 PM
9:30 PM - 6:00 AM

The facility may maintain security lockdown at other times as needed for special security reasons.

The facility will conduct a roll call at 2:00 PM each day. You should remain quiet and in place during this roll call.

Besides the routine inmate lockdown at shift changes, afternoons, and nights, there are times when security/emergency situations dictate additional needs for inmate lockdown. *Therefore, it is necessary that all inmates, at all times, immediately obey orders to lockdown.*

*Inmates/cellblocks/dorms that refuse to lockdown immediately upon order to do so will cause that inmate/cellblock/dorm to go on 24-hour DISCIPLINARY LOCKDOWN and*

16

---

lose all inmate privileges for that 24 hours (i.e. no television, no telephones, no visitation, no canteen, no recreation, no library).

Any inmate/cellblock/dorm that *continues* to be *non-compliant during the 24-hour DISCIPLINARY LOCK-DOWN* will have the *DISCIPLINARY LOCKDOWN* (and loss of all inmate privileges) *extended for an additional 24-hour period.* Inmate/cellblock/dorms in this status will also be put on bagged meals. No inmates will be moved out of a cellblock/dorm while on *DISCIPLINARY LOCKDOWN* status except for security reasons. If relocated, those inmates will be on *24-HOUR DISCIPLINARY LOCKDOWN* wherever they are housed.

*Inmates/cellblocks/dorms that are involved in incidents that threaten the security of this facility will cause that inmate/cellblock/dorm to go on 24-HOUR SECURITY LOCK-DOWN and lose all inmate privileges for that 24 hours (i.e. no television, no telephones, no visitation, no canteen, no recreation, no library).*

Any inmate/cellblock/dorm that *continues* to be *non-compliant during the 24-HOUR SECURITY LOCKDOWN* will have the *SECURITY LOCKDOWN* (and loss of all inmate privileges) *extended for an additional 24-hour period.* Inmate/cellblock/dorms in this status will also be put on bagged meals. No inmates will be moved out of a cell-block/dorm while on *SECURITY LOCKDOWN* status except for security reasons. If relocated, those inmates will be on *24-HOUR SECURITY LOCKDOWN* wherever they are housed.

**M.**  **Inmates Sentenced To Department of Corrections**

Inmates entering Kilby Receiving Center will wear jump-suits furnished by the Department of Corrections. The only personal property you will be allowed to take with you will be:

a. 1 plain gold or silver wedding band
b. Legal materials/documents pertaining to current or pending case(s)
c. 1 pair white tennis shoes
d. 1 watch (valued at $25.00 or less)
e. 1 Bible or Koran

17

### N. Notary Services

You should complete a *Property Release Form* in order to have the property that you cannot take with you picked up. Property not picked up within seven (7) days will be destroyed.

Notary Service is provided for Federal legal documents only at a charge of $.50 (50 Cents) per page.

## 4. Violations, Penalties, Hearings

### A. Minor Violations

1. Acting insolent toward personnel
2. Lying or providing a false statement to staff
3. Using abusive language
4. Participating in an unauthorized gathering
5. Being in an unauthorized area, including another inmate's cell
6. Making, possessing, or using intoxicants
7. Smoking
8. Gambling
9. Being unsanitary/untidy; failing to keep your person or quarters clean
10. Loaning property or anything of value for profit
11. Malingering or feigning an illness
12. Failure to be fully dressed anytime outside of cell or off bunk or mattress
13. Wearing any material, in any way, on the head
14. Leaning on (or over) railings or sitting on the stairs
15. Using any Facility property for unintended purpose
16. Covering air vents with paper, etc.

### B. Major Violations

1. Minor violations repeated 3 times
2. Possessing unauthorized clothing
3. Burning paper or any other material for any reason
4. Possessing any items not on the approved list of items allowed to inmates (i.e. contraband such as money), jewelry, cigarettes, lighters, matches, etc.)
5. Writing on the walls, furniture, clothing, or other minor damage to Detention Facility property of less than $50.00

6. Failing to comply with an officer's lawful order
7. Fighting
8. Attempting to control other inmates, whether through coercion, force, or threat
9. Refusing to provide a urine or breath sample upon request
10. Giving or offering any official or staff member a bribe or anything of value
11. Destroying, altering, or damaging Detention Facility property or property of another person
12. Possessing unauthorized property belonging to another person or the government (stealing)
13. Tampering with or blocking any locking device
14. Hoarding, selling, or transferring medication issued by the Detention Facility or from any source
15. Failing to stand count or interfering with a count
16. Violating rules or regulations
17. Disrupting or abusing canteen, visitation, telephone, library, classes, or recreation privileges
18. Disrupting or abusing religious, medical, or food services, or any other Detention Facility activity or program
19. Stoppage of, or placement of foreign objects or matter into toilets, showers, sinks or any other drains.

### C. Serious Violations

1. Major violations repeated 3 times
2. Murder
3. Starting any fire may be considered arson and you will be charged appropriately
4. Indecent exposure (masturbating)
5. Possessing or introducing a gun or other weapon into the Detention Facility
6. Rioting or encouraging others to riot
7. Assault and battery on inmate and/or personnel
8. Practicing extortion or blackmail, demanding or receiving anything of value in return for protection against others to avoid bodily harm or under threat of informing
9. Engaging in a sexual act
10. Making sexual proposals or threats.
11. Possessing or introducing an explosive, or any object modified to be used as a weapon, chemical agent, or any type of ammunition, into the Detention Facility
12. Possessing, selling, using or introducing into the facil-

ity any narcotics, narcotic paraphernalia, drugs, or intoxicants not prescribed for the individual by medical personnel.

13. Violating a condition of furlough, pass, or any other conditional or temporary release (i.e. funeral, work, money, security items, or official paper etc.)

14. Leaving the Detention Facility without authorization

15. Violating any municipal, county, state, or federal law

16. Counterfeiting, forging, or reproducing without proper authorization, any document, article of identification,

17. Acting in a way that disrupts or interferes with security or orderly running of the Detention Facility (i.e. failure to lock-down/return to bunk, not returning issued razors at change-out or at release)

18. Encouraging, facilitating, or otherwise conspiring with others to commit any prohibited act

19. Escaping, attempting to escape, or planning to escape, including failing to return from an approved work release program or community activity at a designated time.

20. Stealing

21. Damaging Detention Facility property (in excess of $50.00)

22. Attempting to intimidate or actually intimidating or controlling personnel or other individuals whether through coercion, force, or threat

23. Interfering with security operations or devices such as firearms, smoke detectors, security strips, blocking or jamming cell doors or cameras, altering or destruction of inmate ID bracelets, etc.

## D. Penalties for Violations

1. For minor violations, you may be verbally reprimanded if it is the opinion of the detention officer that the reprimand should prevent the infraction from happening again. Restriction of privileges may be imposed for a period up to 48 hours (two days) for a minor violation.

2. For a major violation, you may be denied any or all privileges for a period of time not to exceed 240 hours or ten days and/or be placed in disciplinary housing.

20

3. For any serious violation, you may be denied any or all privileges for a period not to exceed 720 hours or thirty days, placed in disciplinary housing, and receive criminal charges if applicable.

## E. Disciplinary Procedures

When staff finds it necessary to charge you with a minor, major, or serious violation of the rules of conduct, he/she should comply with the following procedures:

1. Notification of Supervisor
2. Prepare an Incident Report if major or serious violation (and Use of Force Report, it applicable)
3. Advise you of the specific violation/charges and maximum penalties
4. Schedule a Disciplinary Hearing as soon as practicable within 7 days of the offense
5. Advise you of your right to a hearing
6. If you acknowledge that you have committed the violation as charged, the Hearing Clerk may proceed to impose the applicable penalty
7. If you deny you have committed the violation, a hearing should be scheduled as soon as practicable. You should be notified of the time and place of the hearing at least 24 hours in advance of the hearing. This will give you time to prepare for your defense
8. You may appeal the decision of the Hearing Clerk within 7 days of decision notification based upon the following:
   (a) Procedural errors
   (b) Submission of new evidence
   (c) Insufficiency of a finding of evidence that proves you did not commit the prohibited act
   (d) Prejudice or other appropriate grounds
9. If you are accused of violating a serious or major infraction, you may be confined to your cell or placed in disciplinary isolation pending the hearing.

21

F.  **Hearing/Review Rules of Conduct**

• You must conduct yourself in an appropriate manner during the hearing. Rules of conduct must be adhered to during the hearing/review proceedings as follows:

1.  Full uniforms required, worn properly
2.  No headwear allowed
3.  Reasonable, civilized behavior is expected
4.  Using abusive language (profanity) is a violation of Facility rules; If you use abusive language at the hearing, you will be removed and the hearing continued in your absence and you may receive additional restriction of privileges for a period of up to five days. If you attempt to intimidate or actually intimidate the hearing clerk and/or witnesses, you will be removed and the hearing continued in your absence and you may be denied any and all privileges for a period of thirty days, placed in disciplinary segregation, and/or receive additional criminal charges.

5.  **Summary**

A.  Nothing herein contained will prevent additional criminal and/or civil action against you.

B.  Violations of rules of conduct may result in loss of privileges and other disciplinary actions.

C.  In an emergency, there may be temporary modification or suspension of the rules and regulations contained in this handbook.

D.  Changes, deletions, additions, or cancellations to these rules and regulations may be made as determined by the Administration of the Montgomery County Detention Facility.

22

23

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| AL-QADEER MALIK HAMLET | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:07-CV-1011-MEF |
| | ) | |
| D. T. MARSHALL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AFFIDAVIT OF SONDRA WRIGHT</u>

Before me, a Notary Public, personally appeared Sondra Wright and after being duly sworn, did say as follows

1.      My name is Sondra Wright. I am a Clerk Typist II employed with the Montgomery County Sheriff's Office Detention Facility. I process outgoing mail for the Facility.

2.      I have not violated the constitutional rights of Inmate Al-Qadeer Malik Hamlet.

3.      Prior to November 7, 2007, I spoke with Inmate Hamlet's mother, Ms. Bowers, concerning her son's mail not being mailed from the Facility. I checked and determined that Inmate Hamlet was not addressing his letters in accordance with Detention Facility Policy and Procedure as outlined in the *Inmate Handbook on Rules and Regulations*. I spoke with Inmate Hamlet and explained to him the proper way for him to address his letters.

On November 3, 2007, I received a request from Inmate Hamlet stating that he needed some paperwork notarized. On November 5, 2007, I went to the 4-South Cellblock where Inmate Hamlet was housed. I explained that I would ask the Captain of Inmate Programs and Services for approval to notarize his paperwork. Permission was granted and I returned to

4-South and told Inmate Hamlet to sign the paper in front of me. I realized that I had left my Notary Seal on my desk and informed Inmate Hamlet that I would take the paper with me and place the seal on it. I placed the seal on the document and laid it on my desk.

On November 6, 2007, I was informed that Inmate Hamlet stated he did not receive his paperwork back. I investigated and determined that his paperwork had become mixed up with other paperwork on my desk and was sent to the Circuit Court in error. The Circuit Court did forward his letter to the Bar Association (see attached). I went to 4-South and explained to Inmate Hamlet what had happened and asked what I could do to help him. He replied that he "wanted to send it to his mother to mail". He also stated that the other paperwork that should have been sent with it was in his room. He told me that "it was okay – that he would write the Alabama Bar Association and get a new packet". (Note: On November 8, 2007, Inmate Hamlet mailed a letter from the Facility to the Alabama Bar Association.) At approximately 1240 hours I received a telephone call from Ms. Bowers. She questioned me concerning Inmate Hamlet's mail. She stated her son told her that he had sent her and his sister mail but she said she had not received any mail from him. She also stated that someone was holding her son's mail. I explained to Ms. Bowers that I keep accurate records of all outgoing mail and that mail from her son had been mailed to her on September 4, 2007, September 20, 2007 (2 letters), October 1, 2007, and November 8, 2007. On November 8, 2007, a letter was mailed to New Jersey. During the week of November 9 – 12, 2007, Inmate Hamlet wrote several letters to the Courts.

On November 9, 2007, I received a Grievance from Inmate Hamlet stating that I had misplaced/lost his mail (see attached). He also stated that he had not received any indication from the Clerk of the Court that they had received his mail and that he had asked them to notify him when they received it. He also requested a printout of all outgoing mail.

I have no knowledge of when the Court responds to inmate mail. The Detention Facility does not furnish printouts to inmates of outgoing mail.

On November 21, 2007, while preparing mail to be shredded, I came across a letter that Inmate Hamlet had sent down to be mailed to New Jersey. The letter was not addressed in

accordance with Detention Facility Policy. I went to 4-South and again explained to Inmate Hamlet the proper procedure for mailing letters out of the Facility. He refused to put a last name on the envelope – just the letter "K". I told him that I would wait while he corrected the address and would then mail the letter for him. He refused to make the correction stating he did not see the need to put the last on the envelope.

4.    I have not denied Inmate Hamlet access to the Courts nor have I censored his mail. His mail has been processed in accordance with Detention Facility Policy.

_____
Sondra Wright

Sworn to and subscribed before me this _12_ day of _December_, 2007.

_____
Notary Public
My Commission Expires September 13, 2010

Montgomery County Detention Facility
# INMATE REQUEST FORM

DATE: 11-03-07                    TIME: 3:30 p.m
NAME: ALQADEER MALIK    BOOKING # 89743    CELLBLOCK: 4-B
HAMLET

*Please check ONLY ONE of the following:*

____ LAUNDRY
____ RECREATION
____ CHARGES/BOND INFORMATION
____ MAIL
____ CANTEEN
____ ATTORNEY FORM - (Hardship Affidavit)
____ COURT REQUEST FORM

____ PROPERTY
____ VISITATION
____ FOOD SERVICE
____ GENERAL LIBRARY
____ MONEY INFORMATION
X OTHER  notary

*Briefly state your request:*

Ms. Wright I have a legal
Document that has to be
notarized please help soonest.

DO NOT WRITE BELOW THIS LINE - FOR REPLY ONLY

Date: 9⁰⁰ Am          *ACTION TAKEN*          Time: 11/4/07

Notary Done / Charge $.50¢
Sent to court for mailing        11/4/07
                                 Informed inmate of what
                                 happened stated they
                                 may SN

Action Taken by: ___Wright___
                    *Signature*

PLACE THIS FORM IN INMATE HANDMAIL BOX FOR PICK UP

*Inmate Request Forms will be routed to the appropriate supervisor or administration for disposition.*
*Request Forms will be completed and placed in inmate's file.*
*Inmates will receive a copy when a written response is required.*

Revised 11/06

Wright

RECEIVED: 11-16-07
2007013

## MONTGOMERY COUNTY DETENTION FACILITY
# GRIEVANCE OR APPEAL OF DECISION

Date: 11-09-07                          Cellblock: 4 B-11

Name: Ab-Qateer Malik Hamlet    Booking No: 29743

Date/Time of Alleged Incident: Ongoing / on or About 11-07-07

### THE FOLLOWING INFORMATION SHOULD BE INCLUDED:

1. Description or Summary of the Complaint
2. Name of Individual(s) Involved
3. Signature of Inmate

On the Above Dates and prior to the
above Dates, I have complained to
the Mail Clerk Sandra Wright concerning
my incoming and outgoing mail.
I have had an incident where Ms Wright
had notarized a legal document.
A complaint concerning an Attorney.
Ms Wright lost or misplaced this
important document - and admitted
to it - this denied me access to
the courts. I called my sister last
night regarding copies of legal motions
that I had submitted to the three court
that I sent to Her and my mother - along
with a card to my sister in New Jersey -
they have not received this correspondence -
I have submitted PRO-SE motions thru the
Mail with postage. I have not received
Any indication that the
clerk of court Has received
it, and I

_____
Signature of Inmate

PLACE THIS FORM IN INMATE HANDMAIL BOX FOR PICK-UP    Revised 06/11/04

Asked the clerk to notify me upon
receipt. I have asked for a printout of outgoing

-rify that my mail is not being censored illegally. (see section G Inmate Handbook concerning Legal mail (p. 9-10 & 11)

I feel that my mail has been tampered with and that it needs to be addressed - Please send a Printout of my outgoing & Incoming mail - I will be sending Legal mail out Regularly in the Future, and would Like Assurance that it will go to the Places Addressed.

3

# Answer to MCDF Personnel Response to Grievance

To:   Patricia Harris
      Grievance Clerk

From: Ms. Wright
      Outgoing Mail Clerk

Re:   Answer to Grievance #20070193

Date: November 14, 2007

---

On November 4, 2007 I went to four south to answer a request (see attached) for notary service for Inmate Hamlet. I saw inmate Hamlet and informed him I would return the paper with a notary seal.

November 7, 2007 at approximately 0953 hours I went back to four south to see inmate Hamlet. He (Hamlet) questioned me about it paperwork. I went back to my desk. This is when I realized that inmate Hamlet paperwork had gotten mixed up with my morning paperwork for the Circuit Court. Immediately I called Circuit Court and spoke with Tameka (ext. 1263) inquiring about inmate Hamlet's paperwork-she stated she did see it and mail it to the address (Alabama Bar Association) on the paperwork .

I reported back to four south and informed Inmate Hamlet that his paperwork must have gotten mixed up with my morning paperwork and that it was mailed. Inmate Hamlet stated " I wanted to seen it to my mother to mail for me and also I have the rest of the paperwork that go with that sheet in my room". I apologized to inmate Hamlet and asked him how I could help him. Inmate Hamlet stated "its okay, I am writing the Alabama Bar Association to get a new packet. (***Note on 11/08/07 Inmate Hamlet sent mail out of the facility to the Alabama Bar Association***)

This has in no way denied inmate Hamlet access to the courts. The week of November 9-12, 2007 Inmate Hamlet wrote several letters to the courts (Melissa Rittenour).

Today at approximately 1240 hours I received a phone called and it was Ms. Bowers, Inmate Hamlet's mother. She questioned me about her sons mailed. She stated "Al-Qadeer informed her that he had sent her and his sister some mailed". Ms. Bowers stated "she has not received any mail from her son and that someone was holding his mail". I informed her that *no one was holding his mail.* I also informed her that her son's mail is going out. I told her I make and keep a list of all outgoing mail.

As far a being notified when the clerk receives his paperwork-that is up to the courts not me. I do not give the inmate a list of their outgoing mail –they should know who and when they are writing.

4

# GRIEVANCE DECISION

GRIEVANCE NO. _____20070193_____    CELLBLOCK: ____4B____

INMATE NAME: _____Alquadeer Hamlet_____    BOOKING NO.___89743___

Mr. Hamlet I have investigated your grievance and have found that on November 7, 2007, your
paperwork was sent to Circuit Court by Mistake. However, Circuit Court did forward your mail to
the Alabama State Bar Association. On November 8, 2007, you mailed out a second set of
paperwork to the association, per Clerk Wright's records. Her records also show on the dates of
November 9-12 several letters were written to the courts. Thus, no one is holding your mail or
denying you access to the courts. Furthermore, it is not the policy of the MCDF to give you print
outs of your in-coming and out-going mail. Thanks.

Signature of Grievance Clerks: _____    Date: 11-15-07

5

*File*

Montgomery County Detention Facility
# INMATE REQUEST FORM

DATE: 11-19-07

NAME: Al-Qader ex Hamlet       TIME: open    BOOKING # 89743    CELLBLOCK: 4-B-11

*Please check ONLY ONE of the following:*

_____ LAUNDRY
_____ RECREATION
_____ CHARGES/BOND INFORMATION
✓ MAIL
_____ CANTEEN
_____ ATTORNEY FORM - (Hardship Affidavit)
_____ COURT REQUEST FORM

_____ PROPERTY
_____ VISITATION
_____ FOOD SERVICE
_____ GENERAL LIBRARY
_____ MONEY INFORMATION
_____ OTHER

*Briefly state your request:*

Ms wright I'm writing to you about my mail that I sent out Nov 6 and the 7th as well as the 13th and the 15 of Nov. I sent letters out to the courts and to my mother and to my sister in New Jersey they did not get them so I'm writing to you about this matter at hand. Please send me

DO NOT WRITE BELOW THIS LINE - FOR REPLY ONLY

a list of all my out going mail thank you; I sent mail to my mother po box and she did not get it; nor did the courts.

Date: 11/21/07        *ACTION TAKEN*        Time: 2:31p

Refused to correct mail stated he did not see the need to put the last name

Action Taken by: _____
Signature

Officer Smith

PLACE THIS FORM IN INMATE HANDMAIL BOX FOR PICK-UP

*Inmate Request Forms will be routed to the appropriate supervisor or administration for disposition.*
*Request Forms will be completed and placed in inmate's file.*
*Inmates will receive a copy when a written response is required.*

Revised 11/06

6



**Melissa Rittenour,** Clerk and Register, Circuit Court Montgomery County    Telephone (334) 832-1260

Montgomery County Courthouse, P.O. Box 1667, Montgomery, AL 36102-1667

NOVEMBER 27, 2007

MS. WRIGHT,

I REMEMBER FORWARDING A LETTER FROM ALQADEER HAMLET TO THE BAR ASSOCIATION AROUND NOVEMBER 7, 2007.

THANKS,

TOMECA ROGERS
CIRCUIT CLERKS OFFICE

η